### UNITED STATES BANKRUPTCY COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

In re:

PHILADELPHIA HAITIAN BAPTIST CHURCH
OF ORLANDO, INC.,

               Debtor.

_____/

Case No.: 6:18-bk-01091-CCJ

Chapter 11

### TMI TRUST COMPANY'S AND OSK I, LLC'S
### MOTION TO DISMISS CHAPTER 11 CASE

TMI Trust Company, a Texas trust company, as successor by merger to Reliance Trust Company, a Georgia bank and trust company, in its capacity as Trustee for the First Mortgage Bonds, 2007 Series, dated November 28, 2007 ("TMI"), and OSK I, LLC, as the successor in interest to San Joaquin Bank, formerly a California corporation ("OSK," and together with TMI, the "Lender"), secured creditors in this Chapter 11 case, file this Motion to Dismiss the Chapter 11 voluntary petition of the of the Debtor, Philadelphia Haitian Baptist Church, Inc. (the "Debtor"), pursuant to 11 U.S.C. § 1112, for cause, because the Debtor did not file its petition in good faith, and in support thereof says:

### I.      Introduction

The Debtor's February 28, 2018 Chapter 11 voluntary petition is just its latest attempt to thwart the Lender's legitimate and justifiable efforts to protect its collateral, comprised of the Debtor's sanctuary and related properties, and to foreclose its mortgage interest in the Debtor's property. Driven exclusively by the Debtor's serial and consistent practice of delinquencies and defaults, and notwithstanding the Lender's extraordinarily patient efforts to accommodate the

Debtor, the Lender and the Debtor have been in protracted litigation for nearly ten years, in multiple cases and courts.

Throughout the sequential court actions the Lender has expended significant effort to accommodate the Debtor and to facilitate its payment of its debt to the Lender. The most recent state court litigation resulted in a mediated resolution of the Lender's then-pending foreclosure action against the Debtor, which called for monthly payments to the Lender with no provision for late payment or an opportunity to cure. It was agreed that failure to make a timely payment would result in immediate entry of a consent judgment of foreclosure. After this resolution the Debtor defaulted and a consent judgment of foreclosure was entered and is now final and non-appealable. On the eve of the foreclosure sale of the property the Debtor filed its most recent Chapter 11 voluntary petition, hoping to once again forestall the Lender from obtaining title to its collateral, which secures a debt that has been in default for nearly a decade. Through this motion the Lender now seeks to end the Debtor's abuse of the legal process and drain on the Court's resources and to obtain title to the property on behalf of its bondholders, who have received only two interest payments in ten years while suffering a 32% reduction in the principal amount of their investment.

## II.        Background Facts Supporting Dismissal

1.        In 2007, in an effort to reorganize its long-term debt, the Debtor arranged for financing through the issuance of a series of bonds, known as the $5,355,000 First Mortgage Bonds, 2007 Series, dated November 28, 2007 (the "Bonds"). TMI's predecessor in interest was named as Trustee under the trust indenture (the "Indenture") in connection with the Bonds, and the financed indebtedness was secured by a mortgage (the "Mortgage") against substantially all of the Debtor's assets, including its sanctuary and related properties (collectively, the

2

"Property").  In return for the Mortgage, the Debtor received $5,355,000 in proceeds, which it used to refinance its existing indebtedness.

2.       The Bonds were issued in 2007[1], but the Debtor almost immediately began its now common practice of delinquency in making monthly sinking fund payments under the terms of the Indenture.  The Debtor defaulted on its May 1, 2008 payment, and although the Lender served the Debtor with a notice of default it then worked with the Debtor for over a year trying to reinstate payments and bring the Bond indebtedness current.

3.       When the Debtor made no progress toward repayment after a year, the Lender filed its first foreclosure action in the case styled *Reliance Trust Company, etc. v. Philadelphia Haitian Baptist Church of Orlando, Inc. etc., et al.;* Circuit Court, Orange County, Florida; Case No. 2009-CA-029326-O (the "First Foreclosure Case").

4.       After filing the First Foreclosure Case the Debtor and the Lender entered into five separate forbearance agreements spanning nearly five years, all with the intent that the Debtor might bring its obligations current and reinstate its obligations under the Bonds.

5.       Despite the Lender's (and the state court's) extraordinary patience and effort during that forbearance period, after nearly five years the state court in the First Foreclosure Case ordered the Lender to either proceed with its foreclosure or dismiss its case.  Bound by its fiduciary duty to its bondholders and given that the Debtor was still unable to bring its obligations under the Indenture current, the Lender moved for summary judgment in the First Foreclosure Case.

---

[1] The transaction was structured such that a bank made the initial loan and funds advance, which bank then became the initial holder of the Bonds.  All of the indebtedness was secured *pari passu* by the Mortgage.  As each Bond was sold, the bank loan was paid down with sale proceeds and the indebtedness was shifted to the Bonds under the Indenture.  Most of the Bonds were sold, but a few were still held by the bank, which failed and was taken over by the FDIC.  The promissory note was subsequently acquired by OSK I, LLC.

6.      Before the summary judgment could be heard, the Debtor filed its first Chapter 11 voluntary petition in the case styled *In re Philadelphia Haitian Baptist Church of Orlando, Inc., Debtor;* United States Bankruptcy Court, Middle District of Florida, Orlando Division; Case No. 6:14-bk-6667-CCJ (the "First Bankruptcy Case").  As of the filing date of the First Bankruptcy Case, the Debtor owed the Lender $7,700,717.63, of which the entire $5,355,000 principal balance remained unpaid and outstanding.  The Debtor admitted in the 341 meeting in the First Bankruptcy Case that the Debtor filed for Chapter 11 bankruptcy protection because the Lender was seeking to foreclose on the Property.

7.      During the First Bankruptcy Case, and consistent with the Debtor's practice of delinquency, the Debtor was routinely delinquent in its monthly adequate protection payments to the Lender.  The Debtor would typically initially default by failing to timely pay, requiring the Lender to notify the Debtor of the default, which would then prompt the Debtor's payment at the final hour of the required cure period, sometimes with post-dated checks or checks that were dishonored initially for insufficient funds.

8.      A Plan of Reorganization (the "Plan") was ultimately confirmed with an effective date of June 20, 2016.  Under the Plan the Lender's claim was restructured such that the bondholders forfeited essentially all unpaid interest owing under the Bonds and approximately 32% of the principal amount of the Bonds (the Lender's secured claim was reduced from a principal balance of $5,355,000 to $3,665,000).  The Plan included detailed procedures for the Debtor's compliance with its payment obligations in hopes that the Debtor would perform its obligations without the expense of the Lender having to constantly compel the Debtor's compliance through monthly default notices.  The Lender's consent to the Plan was based upon

4

its reliance that the Debtor would punctually fulfill its restructured obligations and these detailed repayment procedures and obligations.

9.      But this effort proved unsuccessful.  Beginning with its very first Plan payment due July 1, 2016, the Debtor was delinquent in payment, triggering the Lender to yet again expend time and money to send a delinquency notice to the Debtor.  Consistent with its past practices, the Debtor would contrive to make the Plan payment at the absolute last moment before expiration of the cure period.  However, the Debtor completely failed to make both the November 2016 Plan payments and December 2016 Plan payments within the cure periods, thereby creating a default under the Bonds as modified by the Plan.[2]

10.      Separate and apart from its failure to pay timely its Plan payments, the Debtor also failed to pay timely its insurance premiums on the Lender's collateral, leaving the Property at risk of being uninsured.  Having received repetitive notices from the Debtor's insurance carriers of the Debtor's payment failures and pending cancellations of insurance coverage (sometimes under circumstances that the coverage had in fact lapsed), and unable to rely on the Debtor to maintain full and adequate property insurance coverage over the Lender's collateral, the Lender unavoidably incurred an additional $33,871.72 for force placed insurance premiums for coverage on the Property.  The insurance premium paid is also secured by the Mortgage. After the Lender's demand upon the Debtor for repayment, the Debtor failed to repay the insurance premiums, which constituted an additional event of default under the Bonds as modified by the Plan.

11.      The Lender also made demand upon the Debtor for the $12,303.19 in unnecessary legal fees and costs the Lender incurred since confirmation of the Plan and attributable to the

---

[2] On October 3, 2016, the Debtor filed a motion for entry of a final decree concluding the case, and on November 10, 2016, the Court entered a Final Decree closing the case.

44380089;2

Debtor's repeated delinquencies.  When the Debtor refused to repay these fees and costs, it constituted yet another event of default under the Bonds as modified by the Plan (together with the default under the Plan and the Debtor's default for failure to repay the insurance premiums, the "Defaults").

12.     After notifying the Debtor that as a result of these Defaults, the Lender was accelerating all the indebtedness due and would be exercising its rights under the Mortgage, the Lender filed its action to foreclose its Mortgage in the case styled *TMI Trust Company, etc., et al.;* Circuit Court, Orange County, Florida; Case No. 2017-CA-2234-0 (the "Second Foreclosure Case").  During this time, the Debtor also received several code enforcement notices for deficiencies in maintaining the Property, which code violations also constitute events of default under the Mortgage.

13.     After filing the Second Foreclosure Case, the parties, each represented by counsel, attended a mediation, and after considerable negotiations the parties entered into a Settlement Agreement (the "Mediation Agreement") that provided for a catch-up of missed Plan payments and a compromise of the other delinquent payment obligations, which was to be paid over time. A fundamental term of the Mediation Agreement was the provision of a bright-line deadline for the receipt by the Lender of each subsequent payment, with each payment required to be received by the Lender no later than 4:00 p.m. on the first day of each month.  Because of the Debtor's pattern and practice of serial delinquencies and defaults, it was specifically agreed by the Debtor that there would be no cure or grace period for the Lender's receipt of payments.

14.     The Debtor immediately returned to its pattern of making last minute payments, and on December 1, 2017, the Debtor failed to make its December payment by the 4:00 p.m. deadline.

6

15.     The Lender then filed the Mediation Agreement, a supporting affidavit of default, and a joint stipulation for entry of a consent final judgment of foreclosure, all as negotiated in the Mediation Agreement.

16.     The court in the Second Foreclosure Case entered the Consent Final Judgment of Foreclosure, which it later amended to include an amended amount of indebtedness due under the Bonds (the "Foreclosure Judgment").  A copy of the Foreclosure Judgment is attached as **Exhibit A**.

17.     Pursuant to the Foreclosure Judgment, the foreclosure sale of the Property was scheduled for March 1, 2018.[3]

18.     The day before the scheduled foreclosure sale, on February 28, 2018 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition (the "Petition"; ECF Doc. No. 1) for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  The Debtor continues in possession of its properties and is managing its business as debtor in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.  No trustee, committee, or examiner has been appointed to date.

19.     The Lender is essentially the only secured creditor listed on the Debtor's schedules.[4]  The Debtor's schedules show the Property is subject to approximately $18,000.00 of code enforcement liens, and that a portion of the Property is subject to approximately $28,000.00 of unpaid ad valorem taxes.  *See* Schedule D (ECF Doc. No. 1).

### III.        Argument

---

[3] The foreclosure sale was originally scheduled for January 31, 2018, but upon the Debtor's request the Court rescheduled the sale for March 1, 2018.

[4] The Debtor shows on its Schedule D that an additional creditor, First Baptist Church of Central Florida, allegedly holds a lien on the Property.  However, First Baptist Church of Central Florida, to the extent it remains a creditor of the Debtor, has no lien on the Property.  It had held a lien on a former outparcel of property of the Church located at 1331 North Pine Hills Road, Orlando, Florida, but that parcel was foreclosed upon and sold during the progress of the First Foreclosure Action with all liens against that outparcel being extinguished.

44380089;2

### a.     Standard for dismissing a case under Chapter 11

Pursuant to 11 U.S.C. § 1112(b)(1), "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interest of the creditors and the estate, for cause . . . ."  In this circuit, "[a] case under Chapter 11 may be dismissed for cause pursuant to section 1112 of the Bankruptcy Code if the petition was not filed in good faith."  *In re Phoenix Piccadilly, Ltd.,* 849 F.2d 1393, 1394 (11th Cir. 1988); *see also In re State Street Houses, Inc.,* 356 F.3d 1345, 1346-47 (11th Cir. 2004).  While there is no specific standard in this circuit for determining whether a petition was filed in bad faith, courts have identified several factors which evidence a bad faith filing, including:

1.   the debtor has only one asset, the real property, to which it does not hold legal title;

2.   the debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors;

3.   the debtor has few employees;

4.   the debtor's property is the subject of a foreclosure action as a result of arrearages on the debt;

5.   the debtor's financial problems involve essentially a dispute between the debtor and the secured creditors which can be resolved in the pending foreclosure proceedings; and

6.   the timing of the debtor's bankruptcy filing evidences an intent of the debtor to delay or frustrate the legitimate efforts of the secured creditors to enforce their rights.

> *In re Phoenix Piccadilly, Ltd.,* 849 F.2d at 1394-1395; *see also In re State Street Houses, Inc.,* 356 F.3d at 1346-47.

44380089;2

This list of factors is not exhaustive and not intended to be rigidly applied. *In re State Street Houses, Inc.,* 356 F.3d at 1347. Rather, these factors are "appropriate guidelines for consideration when evaluating whether a chapter 11 petition in a single asset real estate case was filed in bad faith." *Id.* In fact, "the court may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions.'" *In re Phoenix Piccadilly, Ltd.,* 849 F.2d at 1394. The above-mentioned factors can assist the court as it must focus on the debtor's subjective intentions, and then reach conclusions about the debtor's intent from the totality of the circumstances surrounding the filing of the case. *See* COLLIER ON BANKRUPTCY ¶ 1112.07 [1]; *see also In re Hammersmith Trust, LLC,* 243 B.R. 795, 800 (Bankr. M.D. Fla. 1999) ("Petition must be filed with honest intent and genuine desire to utilize the provisions of the Code to reorganize and not merely as a device to serve some sinister or unworthy purpose and the courts should not and cannot tolerate such misuse of the reorganization process."). A creditor need not wait until the debtor proposes a plan or until the expiration of the period of exclusivity to move to dismiss. *In re Natural Land Corp.,* 825 F.2d 296, 297-98 (11th Cir. 1987).

        **b.**       **This case should be dismissed for cause because it was not filed in good faith.**

This case should be dismissed for cause because the Debtor filed the Petition in bad faith. All of the *Phoenix Piccadilly* factors are present in this case. The Debtor's bad faith is evidenced by the following facts: (1) the Debtor essentially has one asset, the Property, and this case is a "single asset real estate" case as that term is defined in 11 U.S.C. § 101 (51B); (2) the Debtor has only twelve unsecured creditors, whose claims total $5,200 as compared to the $3,484,244 debt owed to the Lender; (3) the Debtor has only a handful of employees, the majority of whom are

part-time musicians and choral directors[5]; (4) as of the Petition Date, and after years of cooperation and patience from the Lender, the Foreclosure Judgement had already been entered and the foreclosure sale scheduled for the following day, evidencing the Debtor's intent to delay and frustrate the Lender's legitimate efforts to enforce its rights; (5) the Debtor's financial problems exclusively involve a dispute between the Lender and the Debtor, which dispute is best resolved (and was scheduled to be resolved) in the Second Foreclosure Action; and (6) the Debtor has repeatedly failed to adequately insure and maintain the Lender's collateral.

Furthermore, the Debtor has no realistic possibility of an effective reorganization because the Debtor's previous defaults under the confirmed Plan evidence that it cannot afford to make payments to the Lender, which now, by virtue of the confirmed Plan in the First Bankruptcy Case and the Foreclosure Judgment, has a restructured secured claim of only $3,484,244.35.  The last appraisal of the Property known to the Lender was its appraisal performed in connection with the First Bankruptcy Case, which indicated a fair market value for the Property of $3,665,000.00.  While the Lender is currently slightly over-secured, unpaid insurance premiums, accruing ad valorem taxes, code enforcement liens, and interest and attorneys' fees continue to accrue, leaving the Lender's claim against collateral, which is the only asset and source of income in this case, at risk of soon being under-secured.  Given its tortured history with the Debtor and the Debtor's incessant payment delinquencies and Plan defaults, under no circumstance would the Lender consider voting to confirm any reorganization plan set forth by the Debtor.

---

[5] In the 341 meeting conducted in the First Bankruptcy Case, the Debtor admitted that it had no employees, it only works with six independent contractors, and that it has three officers, all of whom were uncompensated at that point in time.   The Debtor's Schedule E/F lists eleven creditors who appear to be employees, but excluding the Pastor and Associate Pastor all appear to be part-time employees.

###### c. The Debtor's material default under a confirmed plan and its failure to maintain continuous insurance coverage constitute additional cause for dismissal § 1112(b)(4).

11 U.S.C. § 1112(b)(4) provides certain non-exclusive examples of "cause" for dismissal (or conversion) of a bankruptcy case, including "material default by the debtor with respect to a confirmed plan" and "failure to maintain appropriate insurance that poses a risk to the estate or to the public." 11 U.S.C. § 1112(b)(4)(C) and (N).

Less than six months after confirmation of the Plan, the Debtor materially defaulted under that Plan. On multiple occasions, beginning in November, 2016, the Debtor failed to make timely Plan payments to the Lender. The Debtor's defaults led the Lender ultimately to commence the Second Foreclosure Case, during which the Lender and Debtor agreed under the Mediation Agreement for the Debtor to catch up those delinquent Plan payments. The Debtor defaulted under that agreement. These serial defaults lead to the inescapable conclusion that the Debtor has materially defaulted with respect to the confirmed Plan. *See, In re Red Door Lounge, Inc.,* 559 B.R. 728, 733 (Bankr. D. Mont. 2016) (finding "cause" to exist under 11 U.S.C. § 1112(b)(4)(N) because the debtor, having not made monthly plan payments due to its creditor pursuant to a prior Chapter 11 confirmed plan, was in "material default" "with respect to a confirmed plan.").

Additionally, the Debtor has repeatedly failed to protect the Lender's interest in the Property by, among other things, failing to maintain adequate insurance on the Property and allowing approximately $18,000.00 in code enforcement liens to attach to the Property as a result of its disrepair. Such failures present "cause" pursuant to which this Court "shall" dismiss (or convert) the Debtor's bankruptcy case under 11 U.S.C. § 1112. *See In re Sanders*, 2010 WL 5136192 at *5 (Bankr. D.S.C. Apr. 29, 2010) ("cause" exists under 11 U.S.C. § 1112(b)(4)(C)

because "the debtor testified that he has no insurance on the real property but relies on the secured creditors maintaining force placed insurance. Such insurance generally protects the interest of lienholders but not the interests of the debtor or the bankruptcy estate.").

>            **d.**    **Sanctions should be imposed against the Debtor.**

The power to sanction litigants is within this Court's inherent and statutory authority. *See Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991); 11 U.S.C. § 105(a).  Sanctions can be assessed against a party when it has acted in bad faith, vexatiously, or for oppressive reasons, has delayed or disrupted litigation, or has taken actions in the litigation for an improper purpose. *Chambers,* 501 U.S. at 45-46.  The Bankruptcy Code expressly grants the Court the independent statutory authority to "carry out the provisions" of the Bankruptcy Code through "any order, process, or judgment that is necessary and appropriate."  11 U.S.C. § 105(a).  Moreover, when a bankruptcy petition is dismissed as a bad faith filing, sanctions can be awarded under the court's inherent authority.  *See, e.g., In re Singer Furniture Acquisition Corp.,* 261 B.R. 745 (Bankr. M.D. Fla. 2001).

In this case, it is clear from the indisputable facts that the Debtor acted improperly and in bad faith in filing its Petition and commencing this Chapter 11 bankruptcy case.  After nearly a decade of litigation, on the eve of the foreclosure sale and with no other delay tactics available to it, the Debtor improperly filed this case to avoid an adverse result—losing title to the Property at a foreclosure sale.  The Debtor, having already fought the foreclosure of the Property at every opportunity despite the Lender's attempts to work with the Debtor, is using its Petition merely to maximize its possession of the Property for the sole purpose of frustrating the Lender's efforts to foreclose its Mortgage and unduly burden the Lender with further frivolous litigation in another forum.  This Court should not allow the bankruptcy process to be used as an avenue to frustrate

12

and delay final and complete adjudication of the Lender's *in rem* relief, to which the Debtor has absolutely no defense.  Given the Debtor's bad faith filing for the sole purpose of frustrating and delaying the foreclosure sale of the Property, an award of sanctions against the Debtor is appropriate under the Court's inherent and statutory powers.  *See In re Little Rest Twelve, Inc.;* Case No. 11-31773-AJC (Bankr. S.D. Fla. March 16, 2015)(J. Cristol) (Awarding sanctions for bad faith filing of a voluntary petition under Chapter 7 filed for the improper purpose of delaying adjudication of pending litigation in another forum).

WHEREFORE, TMI Trust Company, a Texas trust company, as successor by merger to Reliance Trust Company, a Georgia bank and trust company, in its capacity as Trustee for the First Mortgage Bonds, 2007 Series, dated November 28, 2007, and OSK I, LLC, as the successor in interest to San Joaquin Bank, formerly a California corporation, respectfully request the Court (i) dismiss this case as a bad faith filing; (ii) order that any future bankruptcy filing shall not operate as a stay against the Lender and the Lender's *in rem* rights in the Property, including the right to complete the foreclosure sale on the Property in the Second Foreclosure Case; (iii) enjoin the Debtor from filing for further relief under the Bankruptcy Code for a period of no less than 180 days; (iv) award appropriate sanctions against the Debtor; and (v) grant such other relief as the Court deems just and proper.

Dated:  March 16, 2018                    AKERMAN LLP


By: */s/John B. Macdonald*
    John B. Macdonald
    Florida Bar No. 230340
    Email: john.macdonald@akerman.com
    Amy M. Leitch
    Florida Bar No. 90112
    Email: amy.leitch@akerman.com
    50 North Laura Street, Suite 3100

Jacksonville, Florida 32202
Telephone: (904) 798-3700
Facsimile: (904) 798-3730

   and

Jules S. Cohen
Florida Bar No.  014520
Email:  jules.cohen@akerman.com
Post Office Box 231
Orlando, Florida  32802-0231
Telephone: (407) 843-7860
Facsimile: (407) 843-6610

*Attorneys for TMI TRUST COMPANY and OSK I, LLC*

14

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was furnished this 16th day of March, 2018, either by electronic notification or U.S. mail, postage prepaid and properly addressed, to:

Philadelphia Haitian Baptist Church of Orlando, Inc.
PO Box 580812
Orlando, FL 32858

James H. Monroe, Esq.
Cynthia E. Lewis, Esq.
James H. Monroe, P.A.
PO Box 540163
Orlando, FL 32854 0163

Elena L. Escamilla
Office of the United States Trustee
400 W. Washington Street, Suite 1100
Orlando, FL 32801

*/s/ John B. Macdonald*
Attorney

IN THE CIRCUIT COURT, NINTH
JUDICIAL CIRCUIT, IN AND FOR
ORANGE COUNTY, FLORIDA

CASE NO.: 2017-CA-2243
DIVISION: 43

TMI TRUST COMPANY, a Texas trust
company, and OSK I, LLC, a Minnesota limited
liability company,

        Plaintiffs,

v.

PHILADELPHIA    HAITIAN    BAPTIST
CHURCH OF ORLANDO, INC., a Florida
non-profit corporation, BRANCH BANKING
AND TRUST COMPANY, a North Carolina
banking corporation, REGIONS BANK, an
Alabama banking corporation, LANDMARK
AMERICA II, INC., an Ohio corporation, and
FIRST BAPTIST CHURCH OF CENTRAL
FLORIDA,   INC.,   a   Florida   non-profit
corporation,

        Defendants.

## AMENDED CONSENT FINAL JUDGMENT OF FORECLOSURE

**THIS ACTION** came before the Court on the consent of Plaintiffs and Defendant Philadelphia Haitian Baptist Church of Orlando, Inc., a Florida non-profit corporation (the "Borrower"). Due and legal service of process has been made upon the Borrower and the remaining Defendants, and the Clerk has defaulted the remaining Defendants who have not been dismissed. The Court has jurisdiction of the parties in this cause and the subject matter thereof. On the evidence presented, and finding Plaintiffs have filed a verified motion or an affidavit of default in this Court and provided written notice thereof by electronic transmission to Borrower and its counsel, with such verified motion and/or affidavit having specifically described the default under the Settlement Agreement and Release between the parties, on upon the consent of Borrower, it is

       **ORDERED AND ADJUDGED:**

**Exhibit A**

1.  **Amounts Due.** Plaintiffs, TMI Trust Company, a Texas trust company, as successor by merger to Reliance Trust Company, a Georgia bank and trust company, in its capacity as Trustee for the First Mortgage Bonds, 2007 Series, dated November 28, 2007, and OSK I, LLC, as the successor in interest to San Joaquin Bank, formerly a California corporation (together, the "Plaintiffs"), whose address is TMI Trust Company, as Trustee, and OSK I, LLC c/o Mark Young, 1100 Abernathy Road, Suite 480, Atlanta, Georgia 30328, are due:

| | |
|---|---|
| Principal due on the Note and Trust Indenture secured by the mortgage foreclosed: | $3,665,000.00 |
| Interest due through 6/30/2017: | $          0.00 |
| Per diem interest of $538.48 (from 07/01/2017 through 12/1/2017): | $    80,706.48 |
| Force-Placed Insurance Premium: | $    39,315.24 |
| Bond Indenture Default Costs: | $    29,328.14 |
| Attorneys' Fees & Court Costs | $    67,734.03 |
| Sinking Fund Credit:: | $(397,839.54) |
| **TOTAL SUM:** | **$ 3,484,244.35** |

that shall bear interest at the prevailing statutory interest rate of 7% per annum, subject to future interest rate adjustments in accordance with Section 55.03, Florida Statutes, until the judgment is paid in full.

2.  **Lien on Property.** Plaintiffs hold a lien for the total sum specified in Paragraph 1 herein, which lien is superior to all claims or estates of Defendants, on the real property located in Orange County, Florida, described in the attached Exhibit "1" (the "Land") and all property in Orange County, Florida, described in the attached Exhibit "2" (together with the Land, the "Property").

3.  **Sale of Property.** If the total sum set forth in Paragraph 1 above with interest at the rate prescribed by law and all costs of this action accruing subsequent to this judgment are not paid, the Clerk of this Court shall sell the Property at public sale on January 31, 2018, to the highest bidder for cash except as prescribed in paragraph 4, in accordance with Section 45.031, Florida Statutes, by electronic sale beginning at 11:00 a.m. on the prescribed date at:

<p style="text-align:center">www.myorangeclerk.realforeclose.com</p>

4.  **Costs.** Plaintiffs shall advance all subsequent costs of this action and shall be reimbursed for them by the Clerk if Plaintiffs are not the purchaser of the Property for sale, provided, however, that the purchaser of the Property for sale shall be responsible for the documentary stamps payable on the certificate of title. If Plaintiffs are the purchaser, the Clerk shall credit Plaintiffs' bid with the total sum set forth in Paragraph 1 above together with interest and costs accruing subsequent to this judgment, or such part of it as is necessary to pay the bid in full.

<div style="display:flex;justify-content:space-between">Page 2 of 7        CASE NO.: 2017-CA-2243</div>

## Exhibit A

5. **Distribution of Proceeds.** On filing the certificate of title the Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of Plaintiffs' costs; second, documentary stamps affixed to the certificate; third, Plaintiffs' attorneys' fees; fourth, the total sum due to Plaintiffs, less the items paid, plus interest at the rate prescribed in paragraph 1 from this date to the date of the sale; and by retaining any remaining amount pending further order of this Court.

6. **Right of Redemption/Right of Possession.** On filing the certificate of sale, Defendants and all persons claiming under or against Defendants since the filing of the notice of *lis pendens* shall be foreclosed of all estate or claim in the Property and Defendants' right of redemption as prescribed by Section 45.0315, Florida Statutes, shall be terminated, except as to claims or rights under Chapter 718 or Chapter 720, Florida Statutes, if any. Upon the filing of the certificate of title, the person named on the certificate of title shall be let into possession of the Property.

7. **Jurisdiction Retained.** Jurisdiction of this action is retained to enter further Orders that are proper, including, but not limited to, deficiency judgments, writs of possession and supplemental awards of receiver-related fees and expenses, orders of re-foreclosure of any junior interests omitted from this judgment, an award of additional fees or costs to Plaintiff should the sale of the Property be delayed by reason of further proceedings herein, or by reason of stay under the provisions of the Bankruptcy Code, Title 11, United States Code.

8. **Assignment.** Plaintiffs shall be entitled to assign this foreclosure judgment, including the underlying foreclosure sale bid rights, to any third-party without further leave of court.

**IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THIS FINAL JUDGMENT.**

**IF YOU ARE A SUBORDINATE LIENHOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN SIXTY (60) DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.**

**DONE AND ORDERED** at Orange County, Florida, on this _15th_ day of _December_, 2017.

_____
Circuit Court Judge

Page 3 of 7                    **CASE NO.: 2017-CA-2243**

**Exhibit A**

**SERVICE LIST:**

**AKERMAN LLP**
John B. Macdonald, Esq.
Primary Email: john.macdonald@akerman.com
Secondary Email: maggie.hearon@akerman.com
Amy M. Leitch, Esq.
Primary email:  amy.leitch@akerman.com
Secondary email:  ann.lambert@akerman.com
50 North Laura Street, Suite 3100
Jacksonville, FL  32202
*Attorneys for Plaintiffs, TMI Trust Company, and OSK I, LLC*

**PARKER & ASSOCIATES, P.A.**
H. Clay Parker, Esq.
108 Hillcrest Street
Orlando, Florida 32801
Primary Email: hclay@hclayparker.com
Secondary Email: efile@hclayparker.com
*Attorneys for Philadelphia Haitian Baptist Church of Orlando, Inc.*

Arvind Mahendru, Esq.
5703 Red Bug Lake Rd #284
Winter Springs FL 32708
amtrustee@gmail.com
*Attorneys for Philadelphia Haitian Baptist Church of Orlando, Inc.*

Page 4 of 7          **CASE NO.:  2017-CA-2243**

**Exhibit A**

**EXHIBIT "1"**

800 N Pine Hills Road and 5017 Deauville Drive:

Lot 1, Block K, Pine Hills Subdivision Number 8, as recorded in Plat Book "T", pages 68 and 69, Public Records of Orange County, Florida. (Less begin at the Northwesterly corner of said Lot 1, run thence North 89 degrees 38' 50" East along the North line of said Lot 1, 35 feet; thence South 57 degrees 12' 20" West 41.47 feet to the West line of said Lot 1, thence North 0 degrees 21' 10" West along the West line of said Lot 1, 22.25 feet to the Point of Beginning). All said lands lying and being in Orange County, Florida.

AND

Lots 2 through 7, Block J, PINE HILLS SUBDIVISION NO. 8 according to the plat thereof recorded in Plat Book T, Pages 68 and 69, Public Records of Orange County, Florida.

AND

Lots 2 through 10, Block D, PINE HILLS SUBDIVISION NO. 1 according to the plat thereof as recorded in Plat Book R, page 70, Public Records of Orange County, Florida.

Page 5 of 7          **CASE NO.: 2017-CA-2243**

**Exhibit A**

**EXHIBIT "2"**

(a)  All buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Land, and all fixtures, machinery, equipment, building materials, appliances and goods of every nature now or hereafter located on or upon, or intended to be used in connection with, the Land (or the leasehold estate in the event the Land is on a leasehold) or the improvements thereon, including, but not by way of limitation, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light; and all elevators and related machinery and equipment; all plumbing; and all personal property and fixtures of every kind and character now or at any time hereafter located in or upon the Land or the improvements thereon, or which may now or hereafter be used or obtained in connection therewith, including, without limitation, fixtures, machinery, equipment, appliances, vehicles (excluding Debtor's personal automobiles, if any), building supplies and materials, books and records, chattels, inventory, accounts, farm products, consumer goods, general intangibles and personal property of every kind and nature whatsoever now or hereafter owned by Debtor and located in, on or about, or used or intended to be used with or in connection with the use, operation or enjoyment of the Land or any improvements thereon, including all extensions, additions, improvements, betterments, after-acquired property, renewals, replacements and substitutions, or proceeds from a permitted sale of any of the foregoing, and all the right, title and interest of Debtor in any such fixtures, machinery, equipment, appliances, vehicles and personal property subject to or covered by any prior security agreement, conditional sales contract, chattel mortgage or similar lien or claim, together with the benefit of any deposits or payments now or hereafter made by Debtor or on behalf of Debtor, all trade names, trademarks, service marks, logos and goodwill related thereto which in any way now or hereafter belong, relate or appertain to the Land or any improvements thereon or any part thereof or are now or hereafter acquired by Debtor; and all inventory, accounts, chattel paper, documents, equipment, fixtures, farm products, consumer goods and general intangibles constituting proceeds acquired with cash proceeds of any of the property described herein, and all other interests of every kind and character in all of the real, personal, intangible and mixed properties described herein which Debtor may now own or at any time hereafter acquire, all of which are hereby declared and shall be deemed to be fixtures and accessions to the Land and a part of the Land as between the parties hereto and all persons claiming by, through or under them.

(b)  All of the interest of Debtor in all easements, rights-of-way, licenses, operating agreements, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, oil and gas and other minerals, flowers, shrubs, crops, trees, timber and other emblements now or hereafter located on the Land or under or above the same or any part or parcel thereof, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances, reversion and reversions, remainder and remainders, whatsoever, in any way belonging, relating or appertaining to the Land or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Debtor.

(c)  All income (including but not limited to, all revenues, pledges, income, gifts, donations and offerings from whatever source owned by Debtor), rents, issues, royalties, profits, revenues and other benefits of the Land from time to time accruing, all payments under leases or tenancies,

Page 6 of 7          **CASE NO.:  2017-CA-2243**

**Exhibit A**

proceeds of insurance, condemnation awards and payments and all payments on account of oil and gas and other mineral leases, working interests, production payments, royalties, overriding royalties, rents, delay rents, operating interests, participating interests and other such entitlements, and all the estate, right, title, interest, property, possession, claim and demand whatsoever at law, as well as in equity, of Debtor of, in and to the same (hereinafter collectively referred to as the "Revenues"); reserving only the right to Debtor to collect the Revenues as provided in the Deed And Agreement executed by Debtor in favor of Secured Party.

(d)   All construction or development contracts, subcontracts, architectural agreements, labor, material and payment bonds, and plans and specifications relating to the construction of improvements on the Land including, without limitation (i) any engineering or architectural agreements entered into with respect to the design and other engineering or architectural services; (ii) the plans and specifications for the construction of said improvements prepared by any engineer or architect; and (iii) any agreements entered into with contractors, suppliers, materialmen or laborers with respect to construction of improvements on the Land.

(e)   If applicable, any and all management contracts, agreements, or other correspondence entered into by and between Debtor and third parties for the management of the collateral secured hereby.

(f)   Together with any and all additional items of personal property, furnishings, fixtures, equipment, furniture, trade fixtures, and other items of property not heretofore referenced above, including any and all musical instruments, church pews, chairs, pulpits, podiums, and all other items used in connection with the Issuer and Issuer's functions.

Exhibit A